UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THADDEUS J. NORTH, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 16-1922 (RMC) |
| SMARSH, INC., *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Thaddeus J. North and Mark P. Pompeo were registered securities brokers who were charged by the Financial Industry Regulatory Authority (FINRA) with improprieties and ultimately subjected to fines and suspensions. Both men vehemently insist that FINRA relied on false data, made available to it by Smarsh, Inc., its alleged co-conspirator. Both Defendants have filed motions to dismiss. In these circumstances, the Court gives Plaintiffs' Complaint a generous reading and allows all reasonable inferences to fall in their favor. Having done that, the Court nonetheless concludes that Plaintiffs' claims are precluded by this Court's decision in *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63 (D.D.C. 2015) (*North v. Smarsh I*), which dealt with the same nucleus of facts at issue here. Additionally, Plaintiffs allege no factual basis to show that any part of the alleged conspiracy took place in the District of Columbia and the Court has no jurisdiction over Smarsh, which does no significant business in D.C. The strong advocacy of Plaintiffs' counsel cannot overcome the applicable law and uncontested facts. The Complaint against both Defendants will be dismissed.

1

## I. BACKGROUND

Thaddeus J. North and Mark P. Pompeo were securities brokers who were the subject of enforcement actions by FINRA. Pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. (Exchange Act), FINRA initiated disciplinary actions against Plaintiffs for alleged improprieties and noncompliance with securities laws and regulations. In pursuing its investigations, FINRA asked Smarsh, Inc.—the email archive vendor for Plaintiffs' former firms—to produce copies of Plaintiffs' internal and external electronic communications.

In the immediate case, Plaintiffs allege that FINRA and Smarsh engaged in "tortious, unlawful, and conspiratorial actions towards them." Compl. [Dkt. 1] at 1. In a prior dismissed case, Plaintiffs "allege[d] that the data produced by Smarsh and relied upon by FINRA was spoliated and tampered." *North v. Smarsh I*, 160 F. Supp. 3d at 70. Defendants again urge the Court to dismiss Plaintiffs' Complaint and Plaintiffs, insisting that the instant matter is entirely different and based on new evidence, vehemently oppose.

The Court summarizes the background facts, which are described in greater detail in *North v. Smarsh I*, 160 F. Supp. 3d at 70-74. Mr. North, a resident of Connecticut, was the Chief Compliance Officer of Southridge Investment Group, LLC (Southridge), from February 2008 to August 2011. Compl. ¶ 5. In 2010, FINRA began investigating Southridge because of various alleged improprieties. *See id*. ¶ 41. As a result, Mr. North and about half of his Southridge colleagues left that firm and became registered brokers with Ocean Cross Capital Markets, LLC (Ocean Cross). *Id*. ¶ 5. Mr. North was also Chief Compliance Officer at Ocean Cross from August 2011 to January 2013. *Id*. Mr. Pompeo, a resident of Massachusetts, was a registered securities broker with Southridge from January 2010 to September 2011 and with Ocean Cross from September 2011 to September 2012. *Id*. ¶ 6. Messrs. North and Pompeo were

charged by FINRA with alleged improprieties. Mr. Pompeo settled the case against him. Mr. North continues to challenge two FINRA cases in which he is named as a respondent.

Smarsh is a New York corporation with its principal place of business and headquarters in Portland, Oregon. *Id*. ¶ 2. It identifies itself as "the leading provider of archiving [and] compliance solutions for companies in regulated and litigious industries." *Id*. ¶ 8. Smarsh contracted with Southridge and Ocean Cross to "provide regulatory compliance archiving and compliance services according to the requirements of the Securities Exchange Act." *Id*.; *see also North v. Smarsh I*, 160 F. Supp. 3d at 71-72 (stating Smarsh contracted with Southridge and Ocean Cross "to preserve exact and unchangeable copies of internal and external communications for all registered representatives of the two (2) firms for compliance at all times from July 1, 2009 through July 1, 2013 (Relevant Period) . . . and according to the requirements of the Exchange Act").

FINRA[1] is a private not-for-profit Delaware corporation and a self-regulatory organization (SRO) in the securities industry. Compl. ¶ 2. FINRA is registered with the Securities Exchange Commission (SEC) as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. § 78*o*-3 (2010), and has its headquarters in Washington, D.C., with offices in major cities. Compl. ¶¶ 2, 9. FINRA serves as both "a professional association, promoting the interests of its members, and . . . as a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or . . . [SEC] regulations issued pursuant thereto." *Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005) (citations omitted).

---

[1] On July 30, 2007, the National Association of Securities Dealers, Inc. was renamed FINRA.

3

In *North v. Smarsh I*, this Court determined that Smarsh was not susceptible to legal process in the District of Columbia, *see* 160 F. Supp. 3d at 80-83, and that FINRA was protected by absolute immunity; and therefore, it dismissed the allegations against both. *See id.* at 83-87. Plaintiffs did not appeal.

The instant Complaint contains five counts. It accuses Smarsh and FINRA of various conspiracies and breach of contract. The premise of Plaintiffs' current case is that Smarsh contracted with Southridge and Ocean Cross to provide archiving services for all electronic communications in a manner that ensured that they could not be altered in any way and would be compliant with SEC rules and regulations; but that FINRA and Smarsh then conspired to preserve Plaintiffs' communications on a non-compliant server in a non-compliant collaborative network which allowed access by FINRA, whose agents altered and changed the electronic communications to make them appear violative of the law and SEC regulations.

Count I alleges that Smarsh and FINRA conspired to commit and did commit common law fraud by use of mail services, citing 18 U.S.C. §§ 1341, 1346. It alleges a conspiracy requiring that: (1) "FINRA identify target firms and individuals who used Smarsh for archiving and related compliance actions"; (2) Smarsh transfer the target's "unlawfully intercepted electronic communications [to a] private collaborative network"; whereupon (3) "FINRA agents and employees altered, tampered with, and changed critical compliance information . . . to cause the electronic files to falsely appear to reflect, to infer, and to suggest securities law violations." Compl. ¶ 77. Smarsh's promises that it would archive, preserve untouched, and ensure compliance for Plaintiffs' electronic communications was allegedly necessary to the conspiracy. *Id.* ¶¶ 78-79. "The intentionally altered, falsified, and tampered

4

with records were designed to force Plaintiffs into non-compliance and create inferences of regulatory failures." *Id.* ¶ 83.

Count II alleges that Defendants conspired to commit and did commit common law fraud using wired and wireless media, citing 18 U.S.C. §§ 1343, 1346. The gravamen of this Count is that Plaintiffs' "business and personal electronic communications were intercepted in real time and directed over wired and wireless media to IP addresses associated with a private collaborative network where the electronic communication files were converted, lost, destroyed, altered, tampered with, and reconstructed by the Defendants' design and actions." *Id.* ¶ 95 (emphasis omitted).

Count III alleges that Defendants conspired to intercept, and did unlawfully intercept, electronic communications in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 (ECPA); the Connecticut Wiretapping and Electronic Surveillance Act, Conn. Gen. Stat. §§ 54-41a–54-41u (2002); and the Massachusetts Interception of Wire and Oral Communications Act, Mass. Gen. Laws ch. 272, § 99 (1998) (recognized as unconstitutional in *Project Veritas Action Fund v. Conley*, No. 16-10462, 2017 WL 1100423 (D. Mass. March 23, 2017)). Due to instructions from Smarsh, Defendants were allegedly able to achieve "an unlawful, intentional, voluntary contemporaneous interception of Plaintiffs' electronic communications without Plaintiffs' consent" and without a sworn warrant. Compl. ¶ 101.

Count IV alleges that Defendants conspired to commit, and did commit, the conversion of electronic data. That is, "Defendants conspired to and intentionally interfered with [Plaintiffs'] right to own and possess their electronic data, without Plaintiffs' knowledge or consent, by intercepting and directing the files in real time to a private collaborative network not

5

owned or controlled by Smarsh, where their original electronic communications were tampered with, altered, lost, and destroyed by Defendants' actions and arrangements." *Id.* ¶ 108.

Finally, Count V alleges a common law breach of contract. Messrs. North and Pompeo assert that each was an intended third party beneficiary of the contracts between Southridge/Ocean Cross and Smarsh for handling and archiving their electronic communications. *Id.* at 115. Further, they allege that Smarsh gave them instructions that were contrary to necessary practices for regulatory compliance archiving and that Smarch witnesses provided "deceptive statements and testimony at the request of FINRA Enforcement staff in order to fraudulently conceal Defendants' conspiracy." *Id.* ¶¶ 116-17.

Both Defendants moved to dismiss all counts. *See* FINRA MTD [Dkt. 12]; Smarsh MTD [Dkt. 11]. Plaintiffs filed a consolidated opposition, *see* Opp'n [Dkt. 15], and both Defendants replied. *See* FINRA Reply [Dkt. 17]; Smarsh Reply [Dkt. 16]. The motion is ripe for review.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant[s]." *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)). In other words, "a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). Specifically, the plaintiff "must allege specific acts connecting the defendant with the forum, and . . . the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction." *Id.* at 1378-79 (internal quotation marks and citations omitted); *see also Second Amendment Found. v. U.S. Conference*

*of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

In determining whether a factual basis for personal jurisdiction exists, a court should resolve all factual discrepancies in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456. However, the court need not treat all of the plaintiff's allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Instead, a court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (quotation marks omitted).

### B. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.*, but a court need not accept as true legal conclusions set forth in a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by

7

reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. ANALYSIS

The legal issues presented by the motions to dismiss by FINRA and Smarsh will be addressed separately.

**A. Smarsh's Motion to Dismiss**

Mr. North and Mr. Pompeo recognize, as noted by Smarsh, that this Court dismissed all claims against Smarsh in *North v. Smarsh I* for lack of general and specific jurisdiction and that Plaintiffs filed no appeal. *See* Smarsh MTD at 2-3. Smarsh argues now that Plaintiffs have presented no new facts on which to base jurisdiction and this Court should, therefore, follow its decision in *North v. Smarsh I* and dismiss all claims against Smarsh. *Id*. at 3. Plaintiffs contend that they have named Smarsh as a co-conspirator to FINRA and those allegations bring Smarsh within the jurisdiction of this Court under the long-arm statute of the District of Columbia. *See* Opp'n at 20-24. Plaintiffs argue that FINRA acted in D.C. and therefore co-conspirator Smarsh is liable in D.C. even though Smarsh is not a resident or active business here. *See Jung v. Assoc. of Amer. Medical Colleges*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004).

It is Plaintiffs' burden to establish personal jurisdiction over Defendants and to meet that burden they "must allege specific facts on which personal jurisdiction can be based; they cannot rely on conclusory allegations." *FC Inv. Group LC v. IFX Markets, LTD*, 479 F. Supp. 2d 30, 35 (D.D.C. 2007). The "conspiracy jurisdiction" doctrine allows "acts undertaken within the forum by one co-conspirator in furtherance of an alleged conspiracy [to] subject a non-resident co-conspirator to personal jurisdiction under the long-arm statute." *Jung*, 300 F. Supp. 2d at 140. Plaintiffs must allege "(1) the existence of a conspiracy; (2) the nonresident's

8

participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Id*. at 141 (citing *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991)).

Both the existence of the conspiracy and the overt action taken within the forum must be plead with particularity. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) ("[B]ald speculation or a conclusory statement that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory."); *see also Edmond*, 949 F.2d at 428 (Silberman, J, concurring) ("[W]e cannot allow plaintiffs to subvert the important constitutional principles of sovereignty and due process that underlie personal jurisdiction limitations with mere unspecified and unsubstantiated claims that multifarious defendants were part of a broad conspiracy and that one of them committed some [act] in the plaintiffs' desired forum."). This requirement to plead with particularity is "strictly enforced, and courts in this Circuit have applied the . . . theory 'warily' in light of concerns that plaintiffs will use the doctrine to circumvent the constitutional boundaries of the long-arm statute." *Jung*, 300 F. Supp. 2d at 141.

Plaintiffs fail to plead the alleged conspiracy with the necessary particularity. Plaintiffs offer no facts to identify when the conspiracy began, instead providing a range of almost 4 years when they believe the conspiracy must have begun. Compl. ¶ 75 ("The evidence shows that Defendants commenced their conspiracy . . . as early as December 23, 2005 but before July 1, 2009."). They identify only one actual encounter between a Smarsh representative and a FINRA representative.[2] However, the Complaint contains no more facts and the

---

[2] The April 27, 2015 FINRA Hearing Transcript includes testimony from James McKennedy, of FINRA, regarding an encounter with Jimmy Douglas, a Smarsh employee. *See* Ex. 9, Opp'n, April Hrg. Transcript [Dkt. 15-10]. Mr. McKennedy testified that he met Jimmy Douglas when

allegations that that single encounter is evidence of a conspiracy are raised only in arguments in Plaintiffs' Opposition. *Compare* Opp'n at 23 (citing Ex. 9, April Hearing Excerpts) *with* Compl. ¶¶ 55-57 (referencing Mr. McKennedy and Mr. Douglas, but not indicating that they met or communicated with one another). All allegations in the Complaint regarding the conspiracy are mere speculation or barren conclusions, without factual support. *See, e.g.*, Compl. ¶¶ 77-79, 84, 108. Even with Mr. McKennedy's sole conversation with Mr. Douglas, the allegations would be insufficient to show an agreement between the parties to conspire to divert electronically stored information, alter its content, and prosecute false claims against Plaintiffs.

The expert declarations submitted by Plaintiffs provide no assistance in supporting their theory of conspiracy. The declarations focus on Plaintiffs' various technical allegations but do not provide any factual support to demonstrate communications between the alleged conspirators or facts to show a conspiracy. The Declaration of Jon Berryhill dated March 2, 2015 stated, in part, that based on the evidence he had examined "FINRA has been massively misled by Smarsh." Ex. 4, Compl., March 2, 2015 Declaration of Jon Berryhill [Dkt. 1-4] ¶ 5 (Berryhill March 2015 Decl.). Mr. Berryhill *contradicts* the present allegations of a Smarsh/FINRA conspiracy but is consistent with Plaintiffs' initial allegations directed only against Smarsh. The Declaration of Frank Huber dated December 22, 2015 concludes, without

---

he gave a presentation at a FINRA office. *Id*. at 38. Mr. Douglas presented on "what Smarsh's platforms do . . . to give . . . the staff [at FINRA] a better understanding of the system." *Id*. at 39. Mr. McKennedy attended the presentation and spoke with Mr. Douglas afterwards about Smarsh. Specifically, Mr. McKennedy asked about "an 8210 Request asking for all evidence of email review" and the types of information Smarsh could provide consistent with that request. *Id*. Mr. Douglas explained that Smarsh had the ability to run more reports than the company, Ocean Cross, originally conducted. *Id*. Following the conversation with Mr. Douglas, Mr. McKennedy decided it "would be a good opportunity to reach out and see if [FINRA] could obtain those reports from Smarsh. As a third-party vendor, [Smarsh] ha[s] an agreement with FINRA that basically states that they will provide [FINRA] this information if . . . ask[ed] for it." *Id*. at 40.

10

factual support, that FINRA and Smarsh acted "in a coordinated way"; however, Mr. Huber ultimately blames FINRA alone, and not Smarsh, for alterations to emails. Ex. 5, Compl., December 22, 2015 Declaration of Frank Huber [Dkt. 1-5] ¶ 5 (Huber Dec. 2015 Decl.) ("FINRA and only FINRA was responsible for the alteration and spoliation of emails . . . [;] Smarsh facilitated FINRA's role."); ¶ 7 ("FINRA and only FINRA was responsible for spoliating the emails at issue and . . . Smarsh's role was to facilitate delivering the email to FINRA."); ¶ 9 ("I conclude that FINRA and only FINRA was responsible for spoliating and altering the Southridge and Ocean Cross emails and Smarsh willingly facilitated FINRA's role."); ¶ 12 ("FINRA and only FINRA was responsible for the spoliation and alteration of emails at issue and Smarsh helped facilitate FINRA's role."). Despite Mr. Huber's repeated conclusion that Smarsh facilitated FINRA's actions, his declaration and Plaintiffs' Complaint provide no facts from which the Court could infer the existence of an agreement between FINRA and Smarsh, which is necessary to plead conspiracy.

Plaintiffs also fail to allege "an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Jung*, 300 F. Supp. 2d at 141. Neither Plaintiffs nor their experts identify any overt acts taken in furtherance of the alleged conspiracy by FINRA or Smarsh in the District of Columbia. To the contrary, the investigations into Mr. North's conduct were conducted by FINRA offices in Boston and New Orleans. *See* Compl. ¶ 43. Notably, Smarsh is a New York corporation headquartered in Portland, Oregon, and has no office, personnel, or servers in the District of Columbia. *See North v. Smarsh I*, 160 F. Supp. 3d at 71. Plaintiffs cannot rely on FINRA's office in the District of Columbia to justify jurisdiction without overt acts in furtherance of the alleged conspiracy here, Compl. ¶ 2, and merely alleging that FINRA tampered with emails does not place that activity in the District of Columbia.

11

Because Plaintiffs have failed to allege both the existence of a conspiracy and acts taken in furtherance of the conspiracy within the District of Columbia, the Court does not have personal jurisdiction over Smarsh under either D.C. Code § 13-423(a)(1) or (a)(3). The Court will grant Smarsh's Motion to Dismiss.

### B. FINRA's Motion to Dismiss

In *North v. Smarsh I*, this Court determined that "FINRA is absolutely immune for its regulatory and prosecutorial acts and, thus, [the Court] . . . dismiss[ed] Plaintiffs' claim for monetary relief against FINRA with prejudice." 160 F. Supp. 3d at 88. Nonetheless, Plaintiffs now seek $4,000,000 in damages from FINRA. Plaintiffs respond that the *North v. Smarsh I* ruling was limited to "damages claims arising from spoliation and other occurring failures *in the context of a regulatory proceeding*," Opp'n at 17, and does not apply here. FINRA argues that the opinion was necessarily broader than the confines of a specific proceeding, given its role in the investigation, prosecution and enforcement of SEC rules and regulations.

The Court begins with a summary of Plaintiffs' current allegations against FINRA. Plaintiffs contend that their new Complaint concerns "the interception and redirection of Plaintiffs' Email[, by Smarsh to FINRA,] to Plaintiffs' subsequent loss . . . [b]ecause [Smarsh] server(s) . . . are not [now] accessible (due to 'decommissioning')." Opp'n at 11. Fundamentally, Plaintiffs allege that "[e]mail was not archived" by Smarsh as promised, *id.*, but was immediately transferred to FINRA by way of a collaborative network shared between the two, long before any enforcement action might have immunized FINRA. In blunt English, this means that Plaintiffs allege that Smarsh contracted with their employers (Southridge and Ocean Cross), with the blessing of FINRA, to provide electronically stored information archiving in compliance with SEC rules and regulations but that Smarsh did not preserve their emails as required and instead forwarded them to a joint network to which Smarsh and FINRA had

12

immediate access and from which FINRA removed and altered their emails to construct a false claim of securities violations. Plaintiffs offer no reason for FINRA's alleged mendacity.

FINRA moves to dismiss because (1) Plaintiffs' claims are barred by res judicata, collateral estoppel, and the law of the case, FINRA MTD at 9-14; (2) FINRA has absolute immunity for its regulatory actions, *id*. at 14-16; (3) no private right of action exists against FINRA under the Exchange Act, *id*. at 16-19; and (4) Plaintiffs' common law and statutory claims fail to state a claim upon which relief may be granted. *Id*. at 20-25.

FINRA relies on three legal principles as old as English common law: claim preclusion, issue preclusion, and the law of the case. "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Res judicata has two distinct aspects—claim preclusion and issue preclusion—that apply in different circumstances and with different consequences to the litigants. *See NextWave Pers. Commc'ns Inc. v. FCC*, 254 F.3d 130, 142 (D.C. Cir. 2001); *Novak v. World Bank,* 703 F.2d 1305, 1309 (D.C. Cir. 1983). Its purpose is to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and . . . prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Under claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action.'" *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen*, 449 U.S. at 94). If claims "share the same 'nucleus of facts'" they are considered the same cause of action. *Drake*, 291 F.3d at 66 (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir.

1984)). To determine if claims share the same nucleus of facts courts should consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. Dist. of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997).

Under issue preclusion, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). Issue preclusion applies if three criteria are met: (1) the issue was "actually litigated, that is, contested by the parties and submitted for determination by the court"; (2) the prior litigation was "actually and necessarily determined by a court of competent jurisdiction"; and (3) "preclusion in the second trial [does] not work an unfairness" to the party bound by the first determination. *Otherson v. DOJ*, 711 F.2d 267, 273 (D.C. Cir. 1983) (citations omitted).

Under the law of the case doctrine, an unchallenged legal decision made at one stage of litigation becomes the law of the case for future stages of the same litigation. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987). When an earlier decision goes unchallenged, the parties are found to have waived any right to challenge that same decision at a later time. *Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1089-93, 1102-03 (D.C. Cir. 1984).

The doctrine of claim preclusion does not permit plaintiffs to attempt to re-plead the same set of facts, or essentially the same set of facts, but with a different legal theory. Plaintiffs argue that claim preclusion is inapplicable because "this case is not about spoliation

14

and Plaintiffs are not seeking remedies for regulatory conduct, but rather for illegal actions that commenced towards Plaintiffs coincidental to their employments with Southridge and outside of any regulatory proceeding." Opp'n at 14. Rather than focus on the original nucleus of facts, Plaintiffs argue this case enlarges the facts at issue. *See id*. FINRA directly compares Plaintiffs' arguments in Opposition in this matter and those raised in Opposition and Surresponse in *North v. Smarsh I* and contends that there are no viable differences to demonstrate that the instant Complaint is based on new information. FINRA Reply at 2-4.

The Court first compares the Complaint in *North v. Smarsh I* to the immediate Complaint and determines that the same nucleus of facts is involved in both claims. *Compare North v. Smarsh I*, No. 15-cv-494, *North v. Smarsh I* Compl. [Dkt. 1] *with* Compl. Both complaints focus on the process used by Smarsh to archive the electronic records of Southridge and Ocean Cross during FINRA's investigations into Southridge and Ocean Cross. *See North v. Smarsh I* Compl. ¶¶ 21-25, 34; Compl. ¶¶ 19, 31-33, 41. In both complaints, Plaintiffs allege that electronic records were altered, incorrect, missing, and destroyed, which led to an incomplete and inaccurate set of records being provided to FINRA.[3] *See North v. Smarsh I* Compl. ¶¶ 43-44, 55-57; Compl. ¶¶ 21, 51, 61. The only differences in the complaints are Plaintiffs' allegations regarding the relationship between Smarsh and FINRA and the intent behind the alteration and destruction of electronic records. In Plaintiffs' first lawsuit, they claimed that Smarsh misled FINRA and spoliated the records through negligence, while in the current lawsuit Plaintiffs claim Smarsh and FINRA conspired together to alter the records. *See*

---

[3] Additionally, as evidenced by the chart in FINRA's Reply in this case, *see* FINRA Reply at 2-4, the statements made in Opposition here and in the Opposition in *North v. Smarsh I* clearly rest upon the same alleged facts and are extremely similar, merely substituting spoliation for conspiracy.

15

*North v. Smarsh I* Compl. ¶¶ 63, 69, 73-80; Compl. ¶¶ 23, 75-79. The only new "facts" presented in the Complaint in this case are those related to the technical analysis done by Plaintiffs' experts. After the first suit was dismissed, Plaintiffs sought a new technical expert and that expert reevaluated the electronic records and wrote a report that opines that Smarsh and FINRA worked together to alter the records purposefully. *See* Compl. ¶ 64. These new "facts" are not facts, but instead are new allegations and new theories of the case that spring from the same nucleus of facts as *North v. Smarsh I*.

Plaintiffs cite *Stanton v. Dist. of Columbia Court of Appeals*, 127 F.3d 72 (D.C. Cir. 1997) to support the Complaint and, indeed, the D.C. Circuit ruled that "post-judgment events give rise to new claims, so that claim preclusion is no bar." *Id.* at 78 (emphasis omitted). Plaintiffs stress their diligent investigations and advice of experts *after North v. Smarsh I* to extend *Stanton* to this case. Plaintiffs misread *Stanton*. *Stanton* specifically listed examples of post-judgment events that give rise to new claims, such as repeated instances of restraints of trade and successive enforcement of a statute. *See id.* The *Stanton* court found that

> [l]itigation of the validity of one past course of conduct is not the same "claim" as either (1) litigation over the validity of similar conduct occurring after the acts covered by the initial litigation . . . or (2) litigation challenging a rule in anticipation of its possible application to similar events occurring or expected to occur after the earlier lawsuit.

*Id.* at 79 (citations omitted). Plaintiffs here satisfy neither of those two exceptions to claim preclusion. Plaintiffs' new expert reports and legal theories do not constitute post-judgment events that overcome claim preclusion. Plaintiffs do *not* allege subsequent wrongful acts. To the contrary, they merely conducted subsequent expert research, which they allege supports a new theory of liability regarding the same facts. A "new claim" within its rubric is not a new legal theory applied to a set of facts; rather, it requires different and new facts that give rise to a new

16

cause of action. Because these claims could have been brought in the initial litigation and were not, they are now waived.

The Court's prior opinion was final and was not appealed by Plaintiffs.[4] Claim preclusion applies to its findings and legal conclusions and warrants dismissal of the claims here. Because the Court finds dismissal of all counts is necessary due to claim preclusion, it will not address FINRA's other arguments in support of its motion to dismiss.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Smarsh's Motion to Dismiss, Dkt. 11, and grant FINRA's Motion to Dismiss, Dkt. 12. A memorializing Order accompanies this Opinion.

Date: August 22, 2017

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[4] Plaintiffs did file an untimely motion to amend the complaint, which was denied by the Court, and in which the Court noted that had the motion been timely it likely would not have resolved the fatal issues present in the original complaint. *See North v. Smarsh I*, No. 15-494, Order on Mot. to Amend [Dkt. 34].